THE ELEANOR.

THE THOMAS W. HAVEN.

THE ELEANOR *et al. v.* THE THOMAS W. HAVEN.

*(District Court, D. South Carolina. January 15, 1892.)*

1. SALVAGE—COMPENSATION.
    A schooner worth $15,000, with a cargo worth $5,000, bound from New York to Georgetown, S. C., when off Frying-Pan shoals, discovered an apparently abandoned vessel, water-logged, and with her cargo of lumber washing about her deck. The schooner lay by her all night, and the next day towed her to Georgetown bar. Finding that she could not cross the bar, the master of the schooner procured two tugs, went on the lumber vessel with a small crew, and had her towed to Charleston. Neither life nor property of the salvors was in any danger. The vessel was sold for $1,950, and her cargo for $1,500. *Held*, that the harbor expenses, pilotage, harbor towage, wharfage, etc., should be charged to the ship, the layage and expense of discharging the cargo to the cargo, and that $950 should be allowed as salvage.

**2. SAME.**

The fact that the master of the lumber vessel had not abandoned her finally, but had gone to seek the assistance of a tug, and had taken his crew because he thought it dangerous to leave them there without a boat, was immaterial to the amount of the recovery, as the rule of a generous recompense would be applied, as in all other cases of salvage.

In Admiralty. Libel for salvage. Decree for libelant.

*J. N. Nathan,* for libelant.

*G. D. Bryan,* for respondent.

SIMONTON, J. The Eleanor, a three-mast schooner, valued at $15,000, with a cargo valued at about $5,000, was on her regular voyage from New York to Georgetown, S. C. On 2d October last, when off Frying-Pan shoals, about 12 M., she sighted the schooner Thomas W. Haven, and bore down on her. The schooner was in 9 fathoms water, about 25 miles from land, loaded with lumber, under deck 153,000 feet, and on deck 87,000 feet, water-logged, sails flapping, some halyards cut, hatches afloat and drifting, deck-load loose and washing about the deck. Not being able to get aboard of her that day, the master of the Eleanor lay along-side that night, and the next day boarded her. He found no one aboard, no boats, no charts or nautical instruments, and no provisions. Concluding that she was derelict, and with reason, (*The Ann L. Lockwood,* 37 Fed. Rep. 233,) the master of the Eleanor put his mate and two men aboard, and, taking her in tow, proceeded on his way to Georgetown. The Haven steered badly, as she was full of water, and, pitching about, parted the hawser. Another and a stronger one was bent, and they reached Georgetown bar without incident the next morning. Finding that the Haven could not cross that bar, the master of the Eleanor secured the services of two tugs, the Brewster and the Congdon, and, leaving his own vessel in charge of his mate and the pilot, he went on the Haven with a small crew, and was towed to Charleston by the tugs. That port was reached in safety. With the exception of a choppy sea and swell the first day, and a fresh breeze between 10 and 2 o'clock on the last night, the weather was fine. Although the Haven was found apparently abandoned as stated, her master says that he left her to seek the assistance of a tug; that he took his whole crew, because he had but one boat, and did not like to leave any one on board so far from land; that landing at Little river he got conveyance to Smithville, hired a tug, and went out in search of his schooner, and could not find her.

It is not necessary to go into the question whether the Haven was really derelict. Whether derelict or not, the salvage award will not depend on any fixed rule of proportion. It will be reached as in every other case of salvage, (*Post* v. *Jones,* 19 How. 161,)—a generous recompense to the salvors, so as to encourage them and also to stimulate others. The service is the relief of property from an impending peril of the sea. Humanity induces the relief, whether the value of the property be great or small. The merit consists in the relief, not in the magnitude of the property salved. *The Pomona,* 37 Fed. Rep. 444. The conduct of the salvors, and their motives, so far as they can be gathered

from their conduct, enter largely into the estimate of the reward. The salvors thought, and had every reason to think, that the property was derelict. In this case there was no danger to life incurred or averted. And the salving vessel was at no time placed in peril. With great propriety she went at once to a vessel evidently in distress, and when she found her helpless, and apparently abandoned, lay by her all night, and the next day took her in safety. The gross value of cargo and vessel have been ascertained by sale,—cargo at $1,500; vessel at $1,950. Certain harbor expenses have been incurred, and the cargo has been discharged. The harbor expenses, pilotage, harbor towage, wharfage, etc., will be charged to the vessel; layage and expenses attending discharge of cargo, to the cargo. Salvage award is fixed at $950, with costs, to be apportioned between the gross value of the vessel and of the cargo.